UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA    )
                            )
v.                          )     No. 3:10-CR-091
                            )
ERIC RICKUS                 )

## MEMORANDUM AND ORDER

Now before the Court is the defendant's December 21, 2020 *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 48]. The United States has responded in opposition [docs. 54, 55] and the defendant has not replied within the time allowed by this Court's Local Rules. For the reasons that follow, the motion will be denied.

## I.   BACKGROUND

In April 2011, the Honorable Thomas W. Phillips sentenced the defendant, as a Career Offender under the Sentencing Guidelines [Presentence Investigation Report ("PSR"), ¶¶ 25, 54], to a 151-month term of imprisonment for the crime of bank robbery. The defendant, a high-security inmate [doc. 54, Ex. 2], is presently serving that sentence at USP Coleman II, a high-security facility, with a projected release date of October 14, 2023. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 8, 2021).

The defendant moves for compassionate release in light of the COVID-19 pandemic generally, hepatitis C, and his age (46) and smoking history. He also discusses his then-current COVID infection and his participation in rehabilitative programming including, in the then-near future, the Bureau of Prisons' ("BOP") Residential Drug Abuse Program

("RDAP").[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

---

[1] The defendant also raises issues pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2] "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114.

### A. Exhaustion

The United States does not contest that the defendant has previously and sufficiently submitted a compassionate release request to the BOP, and that more than 30 days have passed since that request was received by the warden. [Doc. 54, p. 6; Ex. 1]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hepatitis C, his age (46), his smoking history, and his participation in rehabilitative programming including RDAP.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

At the defendant's prison, there are currently three staff and zero inmates positive for COVID-19, with 369 inmates and 105 staff having recovered, and one inmate death. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, within the defendant's correctional complex 634 staff and 4,815 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2021). The defendant tested positive for COVID-19 on November 10, 2020, and he received COVID vaccinations in February and March 2021 [doc. 55], although it is at this time common knowledge that persons can become infected with COVID-19 even if they have previously had the virus and even if they are vaccinated.

BOP medical records confirm that the defendant has a history of hepatitis C. [*Id.*]. In light of a 2005 theft conviction in which the defendant was found in possession of 25

4

packs of stolen cigarettes [PSR, ¶ 44], and in light of his 2008 statement to law enforcement that he had just spent $50.00 of robbery proceeds on cigarettes and beer [*id.*, ¶ 48], the Court accepts his representation that he is a former smoker.

A history of smoking can increase the risk of severe illness from COVID-19, and the risk of severe illness increases with age. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 8, 2021). However, the record before the Court contains no indication that the defendant's smoking history, or his hepatitis C, or his prior COVID-19 infection, or his age, have rendered him particularly vulnerable. At January and July 2021 medical appointments, he appeared well and his pulmonary functioning was within normal limits. [Doc. 55]. The BOP categorizes him as Care Level 1. [Doc. 54, Ex. 2]. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Oct. 8, 2021).

The defendant's sole remaining allegation of "extraordinary and compelling reasons" for release is his post-sentencing rehabilitation. As will be discussed below, that rehabilitation is not as consistent as alleged. Further, Congress has provided that in the context of 18 U.S.C. § 3582(c)(1)(A) "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t). Whether the Court considers the defendant's rehabilitation in isolation or in combination with his other theories, the defendant has failed to meet his burden of

5

demonstrating extraordinary and compelling grounds for release. For that reason alone, his motion will be denied. *See Elias*, 984 F.3d at 519.

Additionally, compassionate release in this case would be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>>
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
> . . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As noted, the defendant is now in federal prison because he robbed a bank. [PSR, ¶¶ 4-10]. This is his second bank robbery conviction, in addition to prior robbery of a gas station, attempted pharmacy robbery, and theft and assault (during which he twice shoved a store clerk during yet another robbery). [*Id.*, ¶¶ 47-50]. His criminal history began at age 21. [*Id.*, ¶ 31]. There are numerous convictions for public intoxication and DUI, along with shoplifting, casual exchange, theft, criminal trespass, and escape, resulting in 21 criminal history points. [*Id.*, ¶¶ 31-33, 35, 37-44, 46, 53]. His "other arrests" span an additional 11 paragraphs of the PSR, evidencing further contact with law enforcement. [*Id.*, ¶¶ 55-65]. State probation, parole, and suspended sentences have been revoked more than nine times, and he committed the instant offense while on probation or parole in three different state cases. [*Id.*, ¶¶ 31, 35-37, 41, 44-48, 52]. As noted, the defendant was sentenced as a Career Offender. [*Id.*, ¶¶ 25, 54]. His polysubstance abuse dates back to at least age eight. [*Id.*, ¶¶ 85-87].

The defendant has indeed participated in an array of BOP programming, which the Court appreciates. [Doc. 48]. As referenced in his December 2020 motion, he even entered RDAP. Sadly, however, he was expelled from that program in July of this year. [Doc. 54, Ex. 2]. Additionally, while serving the current sentence he has incurred 17 disciplinary sanctions. [*Id.*, Ex. 4]. Of greatest concern, he has been sanctioned for threatening bodily harm to staff, fighting (twice), and possessing an intoxicant. [*Id.*]. As noted above, the defendant is classified as a high-security inmate. [*Id.*, Ex. 2]

The Court is mindful that only two years remain on the defendant's sentence. Nonetheless, that fact and the defendant's rehabilitative efforts are strongly outweighed by his criminal history and by his continued misconduct while serving the current sentence. Compassionate release on the facts of this case would not reflect the seriousness of the offense of conviction and the defendant's broader criminal history, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

### III. CONCLUSION

As provided herein, the defendant's motion for compassionate release [doc. 48] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge